# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

In re:                                )
                                      )
Jason Donald Willis,                  )    Case No. 08-41820
                                      )
        Debtor.                       )

## MEMORANDUM OPINION

The United States Trustee's motion to dismiss now before the Court presents two issues. The first, threshold issue is whether 11 U.S.C. § 707(b)(2) applies to cases converted from Chapter 13. In other words, can a case be dismissed as an abuse of Chapter 7 based on an application of the "means test" if the case was originally filed under Chapter 13? The second issue (which the Court reaches because it answers the first issue in the affirmative) is whether the Debtor has rebutted the presumption of abuse which does in fact arise in this case.

On March 6, 2009, the Court entered an interim order announcing its holding that § 707(b)(2) applies to converted cases. The reasons for that holding are discussed below. The Court then held an evidentiary hearing on May 6, 2009, to provide the Debtor an opportunity to rebut the presumption of abuse triggered by the Form B22A filed with the Debtor's motion to convert.

Upon consideration of the evidence presented at that hearing, the Court has determined that the Debtor has failed to rebut the presumption of abuse. The Court will therefore grant the UST's motion to dismiss.

## BACKGROUND

The Debtor, Jason Donald Willis ("Debtor"), filed a Chapter 13 bankruptcy petition on May 9, 2008. He moved to convert the case to one under Chapter 7 on September 5, 2008, and although he later maintained that it wasn't necessary, the Debtor filed a Chapter 7 Statement of Current Monthly Income and Means Test Calculation ("Form 22A") at the same time he filed the motion to convert. On December 23, 2008, the United States Trustee ("UST") filed a motion to dismiss pursuant to § 707(b)(2) alleging that the Debtor's monthly disposable income reflected on the Form 22A triggers the presumption of abuse. The Debtor has $2,627.86 in disposable income; for this particular debtor, the presumption of abuse is triggered when monthly disposable income exceeds $182.50.

At the hearing, the UST offered a concise analysis of the Debtor's current financial situation, conceding that his (and his non-filing wife's) circumstances have indeed changed since the Debtor commenced this case. Based on the UST's analysis, the Debtor's current monthly income (including the wife's contributions) is $8,102.96. From that figure, the UST calculated $7,628.41 of permissible deductions, leaving a monthly disposable income of $474.55 – an amount sufficient to trigger the presumption of abuse.

In rebuttal, the Debtor offered evidence that his income was less than the UST contends and that his expenses were greater than those calculated by the UST. On the income side of the equation, the Debtor offered several recent paychecks from his full-time and part-time jobs and from his wife's job indicating that their current monthly income has dropped to somewhere around $6,858, primarily as a result of the Debtor's wife's change from full-time to "PRN," or "as-needed," status at her nursing job. The Debtor further testified that he believes his and his wife's income will decrease further in the coming months.

On the expense side, the Debtor testified that he has several expenses in addition to (or at variance with) those considered by the UST in her calculations. Specifically, the Debtor testified that he incurs approximately $250 a month in child care costs and $85 a month in mandatory union dues. The UST conceded that the Debtor was entitled to an additional $70-75 credit for union dues, but the UST disputed the Debtor's entitlement to a $250 expense deduction for child care based on his failure to provide written documentation of that expense and his alleged failure to establish that there was no reasonable alternative to this expense.

## DISCUSSION

**1.    11 U.S.C. § 707(b) applies to cases converted from Chapter 13 to Chapter 7**

The dispute between the Debtor and the UST over whether § 707(b) applies to cases converted from Chapter 13 to Chapter 7 – *i.e.*, whether a converted case can be dismissed for abuse – has its genesis in the arguably ambiguous language of § 707(b). Section 707(b) provides in pertinent part:

> [T]he court … may dismiss a case *filed by an individual debtor under this chapter* whose debts are primarily consumer debts, or, with the debtor's consent, convert such

a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.[1]

The Debtor maintains that § 707(b) does not apply to converted cases because it does not explicitly state that it applies to cases *converted* to Chapter 7 from another chapter. According to the Debtor, § 707(b)'s reference to cases "*filed by an individual debtor under this chapter*" limits its application to cases originally filed under Chapter 7. The UST argues that while § 707(b) might refer only to cases "filed . . . under this chapter," other provisions of the Bankruptcy Code make it clear that, for purposes of § 707(b), a case converted to Chapter 7 is deemed to have been "filed under" Chapter 7.

The cases are fairly evenly split on this issue, with two cases holding that § 707(b) does not apply to converted cases – *In re Ryder*[2] and *In re Fox*[3] – and three cases holding that it does – *In re Kellett*,[4] *In re Kerr*,[5] and *In re Perfetto*.[6] Interestingly, both positions ostensibly rely on the "plain language" of the statute and proclaim that their interpretation advances underlying bankruptcy policy goals. None of these decisions, however, is binding on this Court.

*Ryder* and *Fox* advance essentially three arguments in support of their interpretation of § 707(b). First, they place great weight on the fact that § 707(b) does not explicitly refer to converted cases.

> Throughout § 707(b), reference is made to a debtor's filing of a case under Chapter 7. Never does the language make reference to a debtor's conversion of a case under another chapter to Chapter 7. The language is unambiguous that the means test computation required under § 707(b)(2) is required for debtors who have "filed" a case under chapter 7. The fact that the section provides for the dismissal or conversion to chapter 13 or 11 where the court finds abuse is an indication that the drafters were contemplating the effect of conversion specifically in this subsection. If the drafters intended for cases converted to chapter 7 to be subject to this new requirement, they did not say so in the clear language of the section. Moreover, it would also seem counterintuitive to read the section to apply to those cases

---

[1] 11 U.S.C. § 707(b) (emphasis added).
[2] 2008 WL 3845246 (Bankr. N.D. Cal. 2008).
[3] 370 B.R. 639 (Bankr. D. N.J. 2007).
[4] 379 B.R. 332 (D. Or. 2007).
[5] 2007 WL 2119291 (Bankr. W.D. Wa. 2007).
[6] 361 B.R. 27 (Bankr. D. R.I. 2007) (same).

converted from chapter 13 where the section provides for conversion to chapter 13 as a possible consequence of a finding of "abuse."[7]

Second, *Ryder* and *Fox* cite the language of 11 U.S.C. § 348(b) as evidence that Congress did not intend for § 707(b) to apply to converted cases.[8] Section 348 addresses the effects of converting a bankruptcy case from one chapter to another. Section 348(b) provides that "in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, 'the order for relief under this chapter' in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter."[9] These cases note that since § 707(b) is not on this list, a conversion under § 1307 of a Chapter 13 case to one under Chapter 7 does not constitute "the order of relief" under Chapter 7, and, therefore, it should not be considered to have been "filed under Chapter 7" for purposes of § 707(b).

Finally, *Ryder* and *Fox* contend that the application of § 707(b) to converted cases would lead to an absurd result by forcing debtors who have made a good faith effort in Chapter 13 – but failed – back into Chapter 13. Under § 707(b)(2), whether a presumption of abuse arises depends on the outcome of the "means test." That test is based on a debtor's "Current Monthly Income," which 11 U.S.C. § 101(10A) defines as, essentially, the average of the debtor's monthly income for the six months prior to the petition date. Consequently, whether a presumption of abuse arises in a case will always be based on a debtor's Current Monthly Income as of the petition date. If that figure is no longer representative of a debtor's income at the time of conversion, the debtor will inevitably "fail" the means test even though his economic situation may have deteriorated to the point that his actual current monthly income (not the defined term) would be insufficient to trigger the presumption of abuse.

On the other side of the debate, *Kerr, Kellett,* and *Perfetto* hold that § 707(b) applies to converted cases based, in large part, on a broader, contextual interpretation of § 707(b). The fact that § 707(b) doesn't specifically refer to converted cases is of no consequence because, they reason, when § 707(b) is examined with other provisions of the Bankruptcy Code, it is clear that cases

---

[7] *In re Fox*, 370 B.R. at 643. *See also In re Ryder*, 2008 WL 3845246 at *1.
[8] *Id.*; *In re Fox*, 370 B.R. at 643-44.
[9] 11 U.S.C. § 348(b).

4

converted to Chapter 7 are to be treated as if they were filed under Chapter 7, at least for purposes of § 707(b).

These cases also cite 11 U.S.C. § 348 in support of their position, but they come to a conclusion opposite from that of *Ryder* and *Fox*. They reach that conclusion by examining the relationship between § 348(a) and (b) versus *Ryder*'s and concentrated emphasis on § 348(b).

Section 348 provides:

> (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.
>
> (b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.[10]

Viewing these provisions together, *Kerr*, *Kellett*, and *Perfetto* view the function of § 348(b) not as limiting the instances in which the conversion of a case to a different chapter is to be treated as the order of relief under that chapter, but rather as a limitation only on the instances in which the *date* of the filing of the petition, the commencement of the case, or order of relief is changed.[11]

> [T]he clear intent of the section is to retain the original filing date as the date of the "filing of the petition," "commencement of the case" or "order for relief" except in the circumstances provided for in subsections (b) and (c), where these terms are instead deemed to refer to the conversion date. Because Section 707(b) is not mentioned in either subsection (b) or (c) of Section 348, it follows that the original filing date is retained upon conversion, but the case is otherwise treated as if the debtor had originally filed under the converted chapter.[12]

---

[10] 11 U.S.C. § 348(a) and (b).
[11] *In re Kerr*, 2007 WL 2119291 at *3; *In re Perfetto*, 361 B.R. at 30-31.
[12] *In re Kerr*, 2007 WL 2119291 at *3.

5

A second basis cited for holding that § 707(b)'s reference to "a case filed . . . under this chapter" applies to cases converted to Chapter 7 is that a substantially similar phrase in 11 U.S.C. § 1328(f) is interpreted that way.[13] Section 1328(f) – the provision of the Bankruptcy Code governing the time limitations for obtaining a discharge in Chapter 13 – provides:

> (f) Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge—
> (1) in a case *filed under chapter 7*, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter, or
> (2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order.[14]

Courts considering effect of a conversion on a debtor's eligibility for discharge under § 1328 have unanimously (by this Court's research) concluded that the phrase "filed under chapter 7 . . ." applies to cases converted to Chapter 7.[15]

Third, *Kerr* makes a linguistic argument in support of applying § 707(b) to converted cases.[16] According to *Kerr*, the word "filed" in § 707(b) applies not only to cases in which a Chapter 7 petition was initially, physically "filed" under Chapter 7, but also to cases that are "entered on the court's docket" under Chapter 7 at the time a § 707(b) motion to dismiss is filed.[17]

> Webster's Dictionary defines "filed" as "to put or keep ( *e.g* ., papers) in useful order" or "to enter (*e.g.*, a legal document) on public official record." Webster's II New Riverside University Dictionary 477 (1988). Here, in the simplest sense, the debtors' cases were entered on the Court's docket under Chapter 13 by the filing of petitions in bankruptcy. The cases are now entered on the Court's docket under Chapter 7 as
> a result of the debtors' filing motions for conversion. While the cases were initially filed under Chapter 13, they are now filed under Chapter 7. If Congress meant to limit the application of the means test to debtors who initially or originally filed a

---

[13] *In re Kellett*, 379 B.R. at 337; *In re Perfetto*, 361 B.R. at 30-31.
[14] 11 U.S.C. § 1328(f) (emphasis added).
[15]*See In re Resendez*, 691 F.2d 397 (8th Cir. 1982); *In re Knighton*, 355 B.R. 922 (Bankr. M.D. Ga. 2006); *In re Crydzuk*, 353 .B.R. 564 (Bankr. N.D. Ind. 2006); *In re Sours*, 350 B.R. 261 (Bankr. E.D. Va. 2006); *In re Capers*, 347 B.R. 169 (Bankr. D.S.C. 2006).
[16] *In re Kerr*, 2007 WL 2119291 at *3.
[17] *Id.*

6

petition under Chapter 7, that would have been simple to articulate.[18]

Finally, *Kerr, Kellet,* and *Perfetto* offer a straightforward solution to the problem of debtors who might become trapped in Chapter 13 by the application of § 707(b) based on their prepetition CMI: The debtor may simply follow the steps in § 707(b)(2)(B) for establishing special circumstances justifying additional expenses or adjustment of current monthly income for which there is no reasonable alternative.[19]

The Court finds the rationale of *Kerr*, *Kellett*, and *Perfetto* more persuasive.

The Court is particularly persuaded by the apparently unanimous agreement among courts that, for purposes of 11 U.S.C. § 1328(f), the phrase "filing under Chapter 7" encompasses cases converted from Chapter 13 to Chapter 7.  Identical words used in different parts of the same statute generally are presumed to have the same meaning.[20]  The phrase in § 707(b) "filed by an individual debtor under this chapter [Chapter 7]" is not "identical" to the language in § 1328(f), but it is sufficiently similar to warrant application of this statutory canon.  Moreover, this interpretation of § 1328(f) supports what this Court believes to be a more accurate reading of § 348(a) and (b).

Section 1328(f) is not on § 348(b)'s list of code sections for which "'the order of relief under this chapter' in a chapter to which a case has been converted . . . means the conversion of such case to such chapter."  And while this could indicate that the well-established case law interpreting the phrase "filing under Chapter 7" in § 1328(f) as encompassing cases converted to Chapter 7 is wrong, the better answer is that the interpretation of § 348(b) adopted by the cases declining to apply § 707(b) to converted cases is flawed.

The flaw is two-fold.  First, as the court in *Kerr* points out,[21] this interpretation ignores the plain language of § 348(a) which indicates that subsection (b) limits only the effect of § 348(a) with respect to the filing date of converted cases.[22]  Second, a careful examination of the language of § 348(b) reveals that its focus is altogether different from § 348(a).  Section 348(a) stands for the general proposition that the conversion of a case constitutes the order of relief under the chapter to

---

[18] *Id.*

[19] *In re Kellett*, 379 B.R. at 339-40; *In re Kerr*, 2007 WL at *6; *In re Perfetto*, 361 B.R. at 31.

[20] *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85, 126 S. Ct. 1503, 1513, 164 L. Ed. 2d 179 (2006).

[21] *In re Kerr*, 2007 WL 2119291 at *3.

[22] *In re Kerr*, 2007 WL 2119291 at *3.

7

which the case was converted. Section 348(b), on the other hand, is directed at the converse of that proposition,[23] identifying the code sections for which the specific language "the order for relief under this chapter" means "the conversion of such case to such chapter." Quite simply, § 348(b) does not bear on the question of whether the phrase "filed . . . under this chapter" in § 707(b) encompasses cases converted to Chapter 7.

Moreover, the Court takes direction from the Eighth Circuit Court of Appeals's unambiguous statement in *In re Resendez*,[24] that, under § 348(a), "when there is a conversion, the debtors are deemed to have *filed* a Chapter 7 case at the time the Chapter 13 case was filed."[25] Admittedly, the *Resendez* court made this holding in a different context, determining whether property of the estate in a converted case includes the property of the debtor as of date of the petition or as of the date of conversion, but the Court finds no basis to distinguish that case from the present case, especially in light of the Court's interpretation of § 348(a) and (b) discussed above.

Finally, the Court is not persuaded that applying § 707(b) to converted cases will create a conundrum for debtors whose circumstances have changed. They will not be caught in an endless cycle of failure in Chapter 13 and threatened dismissal in Chapter 7 because the presumption of abuse arises based on their CMI. As counsel for the UST stated at the evidentiary hearing, there are two "release valves" for such a debtor: 1) the UST can exercise its discretion under § 704(b)(2) not to pursue dismissal, or 2) the debtor may rebut the presumption by showing the existence of special circumstances.[26]

Therefore, as the Court announced in the Interim Order entered on March 6, 2009, 11 U.S.C. § 707(b) applies to cases converted from Chapter 13 to Chapter 7.

### 2. The presumption of abuse has not been rebutted.

This § 707(b) analysis in this case is relatively straightforward thanks to the UST's concessions that the Debtor's income (including contributions from his wife) has decreased and that

---

[23] B=A is the converse of A=B.
[24] *Resendez v. Lindquist* (*In re Resendez*), 691 F.2d 397 (8th Cir. 1982).
[25] *Id*.
[26] Debtors for whom a presumption of abuse arises should be prepared to rebut the presumption of abuse at the time they file their motion to convert, *i.e.*, by preparing a detailed explanation of, and the documentation supporting, any adjustments to their expenses or income.

some of his expenses have increased. However, as noted above, even with these concessions, the presumption of abuse arises. The UST maintains that the Debtor's monthly disposable income is approximately $400 (representing the $474.55 reflected in her original analysis minus an additional $70-75 the UST conceded at trial for mandatory union dues). Under § 707(b), the presumption of abuse for this debtor arises when his monthly disposable income exceeds $182.50. Therefore, to rebut the presumption of abuse the Debtor needed to establish a further reduction of his income (or increase in expenses) by at least $217.05. The Debtor failed in this task.

There is only one way to rebut the presumption of abuse. A debtor must demonstrate "special circumstances" that justify an increase in the expenses or a reduction of the income used to calculate whether a presumption of abuse arises under § 707(b)(2)(A). The requirements for demonstrating special circumstances are fairly exacting. A debtor must provide: "(I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable."[27]

In this case, the Debtor claimed an additional $250 expense for childcare, but he failed to offer any documentary evidence of that expense, and his testimony that that expense was reasonable and necessary was equivocal at best. On the income side, the Debtor offered several recent paychecks showing a decrease in income and he testified that his and his wife's income would likely continue to decrease. But it was impossible to determine with any certainty that the recent decline in his income was permanent, and he offered no evidence to corroborate his testimony that his income would decrease in the future. In the absence of evidence adequately documenting the Debtor's additional childcare expense or further adjustments to income, and as a result of the Debtor's failure to establish that the alleged adjustments to his expenses and income are reasonable and necessary, the Court finds that the Debtor has at least $400 in monthly disposable income. Therefore, the presumption of abuse arises under § 707(b)(2).

---

[27] 11 U.S.C. § 707(b)(2)(B)(ii)(I) and (II).

## CONCLUSION

For the reasons discussed above, the Court concludes that § 707(b) applies to cases converted from Chapter 13 to Chapter 7, that the presumption of abuse arises in this case, and that the Debtor has failed to rebut that presumption. Therefore, the Court will grant the United States Trustee's motion to dismiss under 11 U.S.C. § 707(b)(2). However, the Court will delay the effective date of its Order for 10 days to allow the Debtor time to file a motion to convert this case to Chapter 13. If no such motion is filed, the case will be dismissed. A separate order consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 2nd day of June 2009.

/s/ Jerry W. Venters
United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
Adam E. Miller
Jason C. Amerine